McINNIS, Judge.
Plaintiff sues for damages totaling $2,855 and attorney’s fees of $1,000 for alleged taking and removing of a Nash automobile from where it was parked in front of his residence, which he alleges was done without resort to legal process. Defendant’s answer denies all of the substantial allegations of the petition, and alleges affirmatively that on March 26, 1951 it loaned plaintiff $300 of which sum $225 was to pay a repair bill on the Nash automobile, and to secure the loan plaintiff executed a chattel mortgage, covering the automobile, recorded in Book 84, Page 254, and that it holds a release of the automobile signed by Willie Harris on January 9, 1952, and ■that by authority of this release, it picked up the automobile in an abandoned condition, on January 20, 1952.
After'trial on the merits judgment was rendered and signed in favor of plaintiff for damages in the amount of $725 and for $250 attorney’s fees, from which judgment defendant has taken a suspensive appeal, and plaintiff has answered the appeal asking that the award for damages be in *799 creased to $1,225, and that the award for attorney’s fees be increased to $500.
The facts of this case are as follows: On March 26, 1951 plaintiff owed defendant a balance on a loan, amounting to about $50. He owned a Nash automobile which he had engaged Doggett Motor Company to repair and owed them about $225 for the repairs. He went to the defendant to borrow the money, and executed a form of chattel mortgage which is not in very good form, but that is unimportant here. Certain household goods and the Nash automobile were described in the mortgage. The amount is stated to be $300, to be paid in 15 monthly installments of $25.57 each, which total $383.55, the excess apparently being for interest. He apparently paid very little on the loan, and on January 9, 1952 he signed or printed his name to a letter addressed to defendant, reading as follows:
“In order to reduce the balance due on my account, which is now in default, and to obviate or reduce court costs, T hereby abandon to you the following property: 1942 Nash, Tudor 6608035 which is security for a loan of $300.00, dated 3/26/51, and affected by a chattel mortgage of even date, and agree and request that you take immediate possession of the said property and sell it for cash at public or private sale, without notice, for the best price you can reasonably obtain, the ■ proceeds of the sale, less reasonable expenses, to be applied toward the payment of my account, it being understood that if there is any deficiency I will be liable therefor on the same terms and conditions as originally corn tracted for.”
Plaintiff is an uneducated Negro, unable to read or write, but has learned to print his name. He stoutly denies that he intended to sign a release of the automobile and that the automobile was to be included in the mortgage. • He says that what he signed on January 9, 1952 was an agreement to. pay something on his debt by the next Saturday, and denies that the paper he signed was read to him..
The letter bearing plaintiff’s name is witnessed by William Nickerson, who was at the time employed by the defendant, but is not now so employed and lives in Baton Rouge. His testimony was not taken, but two other employees of defendant W. F. Hollyfield and E. F. Linzay say they were present when plaintiff signed the paper on January 9, 1952, and they are positive it was read to him.
Plaintiff says he sent $5 by his wife to pay on his debt on the Monday after January 9, 1952, and on February 11, 1952 he made another payment of $25.60 for which he was given a receipt,' which is filed in evidence and shows that $25.59 was for interest, leaving one cent to be credited to the principal. He says that at that time he was told that if he would pay $25 more he could have the automobile back, but he did not have any more money. On March 15, 1952 he filed this suit.
The key to the automobile remained in plaintiff’s possession and is in evidence in the record. In brief, defendant says that plaintiff was asked for the key, and replied that the automobile was not in running condition and would have to be towed in. The record discloses that the gear shift was out of order, and plaintiff says that a mechanic had promised him to go to his home and fix it, but there is not a word in the record showing that plaintiff was asked for the key. The brief also says that plaintiff was asked in December, 1951 if he would release the automobile to be sold and the proceeds to be applied on his debt, but at that time he would not agree, but said he would pay something by January 1, 1952 or would release the automobile to be sold, and that on January 9, 1952 he went to the office of the defendant and said he could not pay any more on the debt, and would sign a release so the automobile could be sold. The record does disclose that plaintiff signed the letter that is in evidence, on January 9, 1952, which he contends was an agreement to pay something on the debt by the following Saturday, but "the ' record does not disclose the visit of December or his promise to surrender the automobile. , The brief also says that the automobile was later sold for junk, but again.there is nothing in the record to show what disposition was made of it.
*800 Defendant in brief admits that the legal contentions of plaintiff with reference to tortious conversion are correct, and that a tortious conversion renders the wrongdoer liable in damages to the owner of the property wrongfully taken, but denies there was a wrongful taking, because of the letter of January 9, 1952, and in support of this argument cites the very recent decision of this court in Gulf States Finance Corporation v. Moses, La.App., 56 So.2d 221. The facts in the cited case are different from this case. Moses had told the plaintiff that he could not pay for the truck and requested that it be taken back. His contention was that it was taken back in payment of the balance he owed on it — not that it was wrongfully taken, as is contended in this case.
Plaintiff has cited numerous authorities in support of his contentions, but inasmuch as it is admitted that plaintiff is on firm legal ground, we will not cite and discuss these authorities, except to mention Grand-eson v. International Harvester Credit Corporation, 61 So.2d 550, 552, decided by this court October 31, 1952, where the facts are somewhat similar. Grandeson owed a balance on a refrigerator, and was behind about a month on a payment. The company had him sign an outright bill of sale to the refrigerator, but made a note on the'back of the bill of sale, that “Henry paid one note of 12.26 today July 25th and signed this agreement with the promise and understanding that he will pay two notes of 12.26 ea. Friday afternoon, bringing him one month in advance on payments. Plenry has already made this money working with Mr. Miller (contractor).” This leads to the conclusion that it was not intended as •a sale, and there was no delivery. Later on while Grandeson was away from home, the company sent its agent there and picked up the refrigerator. His wife neither protested nor agreed to the taking. We note that the Honorable Supreme Court granted writs in this Grandeson case, and has not yet handed down its decision.
After all, the question here is whether or not defendant wrongfully took possession of plaintiff’s automobile. The district judge has not favored us with written reasons for his judgment, however he necessarily had to find that the taking was wrongful. He had the privilege of seeing and hearing, the witnesses as they appeared before him to testify and was in better position to judge of their credibility.
Despite the testimony of the two witnesses for defendant that the so-called release was read to plaintiff, we seriously doubt even if it was read to him that he realized the import of it. William Nicker-son who signed as a witness, and who was defendant’s manager at that time was not called as a witness. His absence is attributed to the fact that he is no longer employed by defendant and lives in Baton Rouge. His testimony could have been taken.
We agree with the district judge that the taking was wrongful, and that therefore the judgment holding defendant liable is correct.
Defendant contends that even if it be held liable there is no proof whatever of any damage as to attorney’s fees and none for loss of use of the automobile because it was not in running order. It is true that no witness was offered to prove attorney’s fees, however, such fees have been allowed in some cases without testimony being offered, and in other cases the testimony has been disregarded and the fee fixed by the court on the basis of the services rendered. Randolph, Singleton & Browne v. Carroll, 27 La.Ann. 467; Donlon v. Babin, La.App., 44 So.2d 134; Sigrest v. Federal Insurance Co., 14 La.App. 55, 57, 129 So. 379; Jackson v. New Orleans Board of Trade, Ltd., 207 La. 571, 588, 21 So.2d 731.
On the question of loss of use of the automobile, of which plaintiff has been permanently deprived, the testimony is that there was something wrong with the gear shift, and that a mechanic had looked at it and agreed to fix it.
It is true that it was not sought to fix by evidence any amount for humiliation and embarrassment, however, if the taking was wrongful and without the consent of the plaintiff, some humiliation, embarrassment and inconvenience follows. This claim is likened to one for pain and *801 suffering in injury cases. It' cannot "bé fixed with exactitude.
 Apparently the award of $725 was based on the value of the automobile, for which plaintiff paid $500 in 1950, and on which he expended $225 for repairs and reconditioning about March, 1951. We doubt that the value of the automobile was increased above its cost in 1950 by these repairs. It is a 1942 model two door Nash, and with ten years use it would hardly be worth $725, and this item will not be increased, rather we would reduce any allowance for value of the automobile to $500. However we believe he is entitled to something for loss of use of the automobile and for humiliation and embarrassment, and for these reasons we will let the award of $725 stand. The fee -fixed for the attorney appears reasonable.
It follows that the judgment appealed from is affirmed at the cost of defendant-appellant in both courts.