168 So.2d 922 (1964)
Milburn E. POWERS et al., Plaintiffs-Appellants,
v.
MOTORS SECURITIES COMPANY, Inc., Defendant-Appellee.
No. 10245.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1964.
Rehearing Denied December 1, 1964.
Writ Refused January 21, 1965.
*923 Naff, Goodman & Johns, Shreveport, for appellants.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This is an action for damages claimed to have been suffered by Milton E. Powers as a result of defendant's alleged illegal seizure and conversion of a 1956 Ford purchased by Powers and financed by defendant. Motors Securities contends its possession was legal under an "extension agreement" couched in the language of a pledge. The lower court, without written reasons, rejected plaintiff's claim and from this adverse judgment plaintiff Powers has appealed. Suit was originally filed by two plaintiff's, Powers and Basinger, but the suit as to Basinger was dismissed on a plea of prescription and he has not appealed.
The record supports the following facts. On October 3, 1959, Powers purchased a 1956 Ford on credit and in connection therewith executed an installment promissory note and chattel mortgage on the automobile. The note and mortgage were cosigned by Power's father-in-law, R. H. Basinger, and the note was subsequently negotiated by the used car dealer to defendant, Motors Securities Company, Inc. Powers became dilinquent on his installment payments due June, October and November, 1960.
In June, 1960, Powers was assigned to a military installation in Bermuda. He left the Ford in the possession of Basinger in order that the latter could repair the motor. These repairs were commenced and in the course of the work the engine block was removed from the automobile. On November 16, 1960, while the motor was disassembled defendant hired a wrecker and removed the Ford, the engine block, and miscellaneous engine parts from Basinger's residence. The car was locked and stored in an uncovered lot adjacent to defendant's office where it was located at the time of trial.
Defendant bases the legality of its possession of the automobile on an agreement, confected by the defendant and allegedly signed by the plaintiff, the pertinent provisions of which are:
"STATE OF LOUISIANA
PARISH OF CADDO
"WHEREAS, The Motors Securities Co., Inc., a corporation organized under the laws of the State of Louisiana, is the holder and owner of certain notes of date 10-3-59 secured by a chattel mortgage on the following described property owned by me, to-wit: 56 Ford Motor #M6MF111927 and,
"WHEREAS, the said notes are past due and unpaid;
"NOW, THEREFORE, as a further security for the payment of said notes and in consideration of an extension of time of 13 days from this date within which to make payment of the same, and the further consideration of agreement not to bring suit against me during said period of extension, I, the undersigned owner of said property, have this day delivered in pledge and do by these presents deliver in pledge the above described property to said Motors Securities Company, Inc., and contract and and agree that in the event said notes should be unpaid at the expiration of said extension of time the said Motors Securities Company, Inc., may sell said property at public or private sale, as it may deem best, without intervention of a court of justice and without any further notice to me, applying the proceeds of said sale, first toward the payment of any expenses incident *924 to the sale, including a selling commission of fifteen per cent of the price, and to any unsecured indebtedness it may hold against me, and apply the remaining balance of the proceeds of said sale as payment on said notes, without affecting in any way the right of said Motors Securities Company, Inc., to resort to legal proceedings against me to collect any balance remaining unpaid after the proceeds of said sale have been credited as above set forth.
"This pledge is accepted by the Motors Securities Company, Inc., herein represented by its duly authorized agent whose signature appears herein below.
"DONE AND SIGNED in presence of the attesting competent witnesses on this the 19 day of Oct. 1960."
By way of background we point out the full amount due the defendant has been paid. This amount was collected by a different suit filed by defendant against Powers and Basinger and subsequent garnishment proceedings against Basinger.
During the trial Powers denied signing the extension agreement and also contended the instrument was not a pledge agreement.
We give consideration first to the nature of the "extension agreement", i. e., whether it constituted a valid pledge so as to make Motors Securities Company a pledgee with lawful possession or whether the instrument, failing as a pledge, renders defendant liable for damages for trespass, the illegal seizure, conversion and deterioration of the car due to the manner in which the car was stored.
It is defendant's interpretation of this agreement that at the end of the specified period of days it had the right, without legal process, to seize the designated property of the debtor and hold that property until the debtor had paid his account in full. Plaintiff argues conversely that the agreement contemplates, in accordance with the express law of Louisiana, that a pledge of the debtor's property is perfected at the time of the execution of the agreement. Pertinent articles of the LSA-Civil Code are:
Art. 3133:
"The pledge is a contract by which one debtor gives something to his creditor as a security for his debt."
Art. 3152:
"It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right." (Emphasis added.)
Despite the clear language of the foregoing articles regarding delivery of possession defendant maintains that, as between the parties, a pledge is effective from the moment of its execution, and the pledgor may not contest its validity for want of delivery, relying on the early case of Pierson v. Metropolitan Bank, 106 La. 298, 30 So. 885 (1901). However, in the Pierson case the contest occurred between the administrator of the Succession of Gragard and the Metropolitan Bank over whether certain cotton warehouse receipts using the word "various" sufficiently complied with Act 72 of 1876. The legislative act provided that in order for a warehouse receipt to stand for the goods themselves such receipt "must represent specific goods, or at any rate must represent a specific part of common, or uniform, mass." The court concluded the receipts pledged to the defendant bank did not comply with the prescribed form and, therefore, could not serve as the subject of a valid pledge. It was also urged the administrator had no right to contest the validity of the pledge. In holding the administrator had such a right the court stated, by way of dictum, that the decedent pledgor could not have contested *925 the validity of the pledge. The syllabus contains this statement:
"While a pledgor may not contest the validity of a pledge for want of delivery, his administrator, in the case the succession is insolvent, may; * * *."
In light of the clear wording of LSA-Civil Code Article 3152 we attach little or no importance to the quoted dictum.
In the instant case there is no contention actual possession was delivered to Motors Securities at the time the instrument was signed. The testimony reveals that as soon as Power's signature was obtained defendant's agent left and did not return for at least thirty days, at which time he hired a wrecker and hauled away the car. Mr. Basinger at that time was away from home working, Power's had returned to Bermuda and Mrs. Basinger testified she gave defendant neither the key to the car nor permission to move it.
In the recent case of Kreppein et al. v. Demarest (La.App.Orleans, 1960) 120 So. 2d 301 (cert. denied) the court had before it the question of the validity of an alleged pledge in regard to interruption of the prescription on a debt. In the course of the opinion, wherein it was decided there was a complete lack of proof either of the object pledged, or that there had been delivery to or possession by the pledgee, the court discussed the case of Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956) and had this to say:
"In that case the Court found that there was possession by "an agent pro hac vice." Therefore, since there was possession, it was not necessary to state that the requirement that there be actual physical possession in the creditor `is not applicable as between the parties to the pledge.'
"The statement in the quoted footnote, that there is no requirement of actual possession as between the parties to the pledge, has not met with the approval of the authors of two law review articles. In an article on Pledge, XXXIII Tulane Law Review, at page 74, Professor Ralph Slovenko, says:
"* * * This position is without support. Pledge is a "real contract." It is formed by the delivery of the thing. The rule is applicable not only with respect to third parties (existence of privilege) but also between the parties (existence of the contract). * * *"
"And in support of this statement the author cites statements by several commentators.
"In another article entitled `Security Devices' which appears in XVIII Louisiana Law Review, at page 50, Professor Joseph Dainow says that:
"`* * * the decision in Scott v. Corkern is a move in the wrong direction because the court treated as valid the pledge of a life insurance policy in the physical possession of the debtor. * * *.'
"In an English translation by the Louisiana Law Institute of Planiol's [Plainiol's] Traite Elementaire de Droit Civil, volume 2, Part 2, at page 366, it is said:
"`* * * So long as there has not been a handing over of the thing, there may be a contractual or a legal obligation to give a pledge, but there is no pledge. * * *'" (Emphasis added by this court.)
We conclude there was no delivery of possession of the car in the instant case. In light of the foregoing authorities the "extension agreement" conferred upon Motors Securities no right to take possession, without legal process, of the automobile belonging to Powers and located on the property of Basinger. Having reached this conclusion we pretermit a decision on *926 whether Powers' signature on the instrument was genuine.
The evidence shows that defendant, immediately after seizing the car, obtained bids on it. This was ostensibly done in order to sell it, although it was not sold but was retained on the lot for some two years before this action was brought. There was testimony the car had been stripped of the radio, heater and ignition system while in defendant's possession. The evidence further reflects plaintiff's counsel made demand on defendant for a return of the automobile by letter dated August 25, 1961, but no effort was made to return it. When defendant committed these acts, it is evident it was no longer acting as a pledgee, but had converted the car to its own use.
"`In order to constitute a conversion there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, * * * or, as otherwise expressed, there must be a wrongful taking or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser. * * *'"
* * * * * *
"The general rule governing the measure of damages for tortious conversion is the value of the property converted, with interest. * * *" Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957).
The only witness testifying as to the value of the car at the time of the seizure was Robert L. French, a used car dealer. When asked the hypothetical question as to the value of the car in the condition it was claimed to be on November 16, 1960, he estimated the retail price to range from $795 to $895. He further testified it would cost about $150 to install another motor. Basinger estimated it would cost him around $70 (without his labor) to put the motor in running condition. We are of the opinion the figure of $795 more nearly approximates the real value of the car at the time of the conversion. Taking into consideration the fact that the motor was out of the car we conclude a sum of $150 should be deducted as the cost of replacing the motor, leaving $645 as damages for this item.
Plaintiff has asked the court to award him the sum of $400 for humiliation, embarrassment, inconvenience, and damage to his reputation, and has cited in support thereof Harris v. Franklin Finance Co., Inc. (La.App. 2 Cir., 1953) 65 So.2d 798, in which this court awarded the sum of $225 for the loss of use of an automobile and the humiliation and embarrassment due to the wrongful taking.
In awarding $100 damages without evidence on the issue this court in Brian v. Wilson Buick Co., La. App., 81 So.2d 145 (1955) stated:
"* * * Where a creditor ignores and circumvents the provisions of the law designed for his use and benefit and resorts to a conversion of the debtor's property, a certain degree of humiliation and embarrassment is experienced by the debtor. In this case, there was a clear and illegal invasion of plaintiff's rights and a taking of his property without his knowledge and consent, however, not from his own premises but from premises where he had arranged for the trucks to be kept."
On this issue, in the instant case, Powers testified he was forced to explain the matter to his Commanding Officer and to ask for leave in February in order to come back to Shreveport; that he again had to return to Shreveport in June of 1962, which necessitated him asking for advance leave and again on September 17, 1962, for the taking of his deposition. We think the humiliation and inconvenience resulting from the illegal taking warrants an award of $400.
*927 Although plaintiff has petitioned for additional damages of $1200 for the wrongful conversion of the automobile and $200 for trespass there is insufficient evidence to substantiate these claims. Plaintiff has been out of the United States for most of the period and at the time of trial was stationed in New Hampshire. He has not shown any pecuniary loss due to his deprivation of the use of the car. Insofar as the trespass is concerned, the car was picked up from the premises belonging to plaintiff's father-in-law and we believe the damages awarded above, under the circumstances, are sufficient to compensate plaintiff for the invasion of his rights and the injury to his feelings.
In accordance with the foregoing reasons the judgment of the lower court is annulled and reversed and judgment is hereby rendered in favor of plaintiff, Milburn E. Powers, and against defendant, Motors Securities Company, Inc., in the sum of $1045, together with 5% interest per annum thereon from date of judicial demand until paid and for all costs.
Reversed and rendered.