197 So.2d 424 (1967)
John and Girlean STEADMAN, Plaintiffs-Appellants,
v.
ACTION FINANCE CORPORATION, Defendant-Appellee.
No. 10768.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1967.
Rehearing Denied April 19, 1967.
Writ Refused June 6, 1967.
*425 Ike F. Hawkins, Jr., Shreveport, for appellants.
Bodenheimer, Looney & Jones, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This action was instituted by plaintiffs, husband and wife, to recover damages for the alleged wrongful conversion of two Cadillacs purchased by plaintiffs and financed by defendant corporation. From judgment in favor of plaintiff Girlean Steadman in the amount of $96, representing the difference between the balance due on the original notes and the amount received by defendant in the sale of the repossessed automobiles, plaintiffs appeal.
Simply stated the facts are these: plaintiff, Girlean Steadman, purchased a used 1957 Cadillac from a second-hand dealer and, after making a substantial down payment, financed the balance through defendant. When this automobile ceased to run she purchased a used 1959 Cadillac, again making a substantial down payment and financing the balance with defendant company.
From date of the purchase of the 1957 Cadillac until June 29, 1966, payments totaling $470.70 had been made to defendant, leaving a balance of $56.97 due. From November 15, 1965, the date the note was given for the $440.40 balance due on the 1959 Cadillac, to June 5, 1966, plaintiffs had paid $342.60, leaving a balance due of $97.80. While it is admitted plaintiffs were not current in their payments, the account cards filed in evidence indicate that until the last month or so before the repossession by defendant payments were made generally in accordance with the terms of the agreements.
Defendant's agent, Mr. Speights, testified that on June 27, 1966 he, together with Jerry Norred, another employee, went to the place where Girlean was employed and procured her signature to a five-day extension agreement. Girlean denies signing any paper on the day in question although she does not deny her signature.
This extension agreement contains the following language which defendant contends was a perfected pledge of the cars in question:
NOW, THEREFORE, as a further security for the payment of said notes and in consideration of an extension of time of (5) five days from this date within which to make payment of the same, and the further consideration of agreement not to bring suit against me during said period of extension, I, the undersigned owner of said property, have this day delivered in pledge and do by these presents deliver in pledge the above described property to said Action Finance Corp., and contract and agree that in the event said notes should be unpaid at the expiration of said extension of time the said Action Finance Corp., may sell said *426 property at public or private sale, as it may deem best, without intervention of a court of justice and without any further notice to me, applying the proceeds of said sale, first toward the payment of any expenses incident to the sale, including a selling commission of fifteen per cent of the price, and to any unsecured indebtedness it may hold against me and apply the remaining balance of the proceeds of said sale on said notes, without affecting in any way the right of said Action Finance Corp., to resort to legal proceedings against me to collect any balance remaining unpaid after the proceeds of the said sale have been credited as above set forth.
"This pledge is accepted by the Action Finance Corp., herein represented by its duly authorized agent whose signature appears herein below."
Thereafter on the instrument appears the date, June 27, 1966 and the signature of Girlean Steadman and D. Speights, as agent of Action Finance Corporation. The agreement was witnessed by Norred.
It is conceded by defendant that the two cars were not delivered on the date of the purported pledge but remained in possession of John and Girlean Steadman until July 6, 1966, when defendant's agents, Speights and Norred, went to plaintiffs' house near Keithville in order to take possession of the cars. At that time John Steadman and James Brooks were working on the 1959 automobile, and the 1957 Cadillac, from which the wheels had been removed, was propped up off the ground. When Speights advised Steadman of the "extension" agreement and told him he had come to get the cars John asked Speights to leave the vehicles and let him come to Shreveport the next day, presumably to pay all or part of the balance due. Speights refused this request insisting he must take the cars or come back with a court order and have them seized. After some further work Brooks and Steadman managed to start the 1959 Cadillac and drove it onto the highway where either Norred or Speights took charge and drove it back to Action Finance Corporation. On July 8, 1966, defendant sent a wrecker and hauled or toward away the 1957 Cadillac. It is conceded neither of plaintiffs were at home on this subsequent date.
After removing both automobiles from plaintiffs' premises defendant sold them to a salvage dealer for $250, applied $154.77 to clear the balance due and retained the difference of $95.23.
Plaintiffs claim a total of $4,446.52 in damages, the petition being amended to increase the amount of the demand to $4,746.52. Itemization of the demand is as follows:

Total cost of and/or value of both automobiles ...................... $2,216.53
(less the $150 owed defendant)
Humiliation and embarrassment ....................................... 1,000.00
Pecuniary loss due to deprivation of the use of said automobiles .... 230.00
Wrongful conversion of said automobiles, including trespass
to plaintiff's property .............................................. 1,000.00
 TOTAL $4,446.52

By supplemental petition plaintiffs ask that the amount claimed to be due for substitute transportation be increased from $230 to $530.
*427 This court recently had before it the case of Powers v. Motors Securities Co. (La.App., 2 Cir., 1964), 168 So.2d 922 (writ denied), which presented much the same problem as now confronts us, and involved an extension agreement identically phrased. We held in that case, on slightly different facts, there had been no delivery of the vehicle and consequently no pledge was ever perfected. In the Powers case, as in the present suit, it was argued the recitation of delivery, though in fact not actually accomplished, completed the pledge. However, it was not contended in Powers, as it is here and so held by the trial judge, that a subsequent passive surrender of possession by plaintiff constituted delivery and perfected the pledge.
The so-called pledge in the case before us is in fact written in unambiguous terms and is an extension of time within which to pay the balance due. In addition this instrument contains a declaration that the two cars were delivered to the pledgee on the very date of the signing of the agreement. The question is whether these automobiles were pledged to defendant under this agreement. The record and testimony of all the parties positively negates the truth of the recital of delivery. It follows since there was no delivery pursuant to the written agreement there was no pledge. It is clear to us defendant allowed plaintiffs to retain possession until the dates on which they were repossessed for the purpose of selling them.
No contention is made that the extension agreement contains a "contract to pledge" in which delivery was contemplated on a later date. Rather the agreement purports to be a present pledge and as such it fails to fulfill the requirements of Louisiana Civil Code Articles 3133 and 3152. The circumstances surrounding the "taking of possession" by defendant's agents convinces us the taking was unlawful and tortious.
The record contains no evidence of the value of the cars at the time of the conversion except plaintiffs' contention they were worth the original cost to them. We find no authority for allowing the original cost as damages. Since the only positive testimony concerning the value of the two cars was that of the salvage dealer to the effect they were worth only $250, we shall limit our award for this item to $250, less the amount due on the contracts.
Having found defendant guilty of tortious conversion we consider the rationale and holding in Harris v. Franklin Finance Co. Inc. (La.App. 2 Cir., 1953) 65 So.2d 798, particularly appropriate to a determination of the quantum of damages to be awarded for humiliation, embarrassment and trespass. As stated there:
"It is true that it was not sought to fix by evidence any amount for humiliation and embarrassment, however, if the taking was wrongful and without the consent of the plaintiff, some humiliation, embarrassment and inconvenience follows. This claim is likened to one for pain and suffering in injury cases. It cannot be fixed with exactitude."
Considering all the circumstances we find plaintiffs entitled to $250 for these items.
This leaves for determination the expense incurred by Girlean for substitute transportation to and from work from date of the conversion to date of trial. We conclude adequate proof has been adduced to warrant the award of $93.50 for this expense.
For the reasons assigned the judgment of the lower court is amended so as to increase the award from $96 to $439.50 and as thus amended is affirmed at defendant's cost.
Amended and affirmed.