242 So.2d 374 (1970)
Marie Joyner TARVER, Plaintiff-Appellant,
v.
Otis TARVER et al., Defendants-Appellees.
No. 11541.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1970.
*375 Long, Sleeth & Hughes, by Rhett R. Ryland, Columbia, for plaintiff-appellant.
Cameron C. Minard, Columbia, for defendant-appellees.
Before BOLIN, PRICE and HEARD, JJ.
PRICE, Judge.
This is an appeal from a judgment in a tort action denying recovery to the plaintiff for the alleged wrongful conversion of an automobile by the defendants.
Marie Joyner Tarver and Otis Tarver became legally separated from bed and board by judgment dated June 13, 1968, at which time the community property included a 1957 Oldsmobile and a 1968 Chevrolet automobile. Prior to final settlement of the community, an agreement was reached whereby Otis Tarver would receive the Oldsmobile and Marie Tarver the Chevrolet. By the terms of the agreement Marie Tarver was to pay the monthly installments owed to the holder of the chattel mortgage on the Chevrolet, General Motors Acceptance Corporation.
The plaintiff contends that, pursuant to this agreement, a bill of sale reciting a cash consideration of one dollar was executed on June 25, 1968, and installments of $124.68 for eleven months were paid by her to G.M.A.C. The June 1969 payment was not timely made and a demand was made upon Otis Tarver, the named owner of the vehicle, to pay the amount necessary to place the account in a current condition. Tarver was advised by letter that should he fail to comply, a suit would be filed and his wages subjected to garnishment proceedings.
At Tarver's suggestion, he and James E. Brooks, president and general manager of B & W Chevrolet, the dealer who sold the vehicle to the Tarvers, discussed with Marie Tarver the transfer to her name of the mortgage on the automobile, thus completely releasing Otis Tarver from any liability.
*376 Plaintiff refused to comply with this request, stating that she had already signed all papers in connection with the transaction that she thought she should sign, and further felt she had been wronged by Otis Tarver's having retained the proceeds of an insurance payment for damages occurring to the vehicle after it had been delivered into plaintiff's possession pursuant to this agreement.
On June 18, 1969 Otis Tarver telephoned William M. Rietzel, Deputy Sheriff of Caldwell Parish, and sought his aid in securing possession of the automobile, explaining that B & W Chevrolet wished to repossess the vehicle. Rietzel proceeded to the plaintiff's place of employment in uniform and in a marked patrol car. Although it is disputed as to the exact conversation that ensued with Marie Tarver, the keys were surrendered to the deputy sheriff, who in turn gave them to Otis Tarver, who drove the vehicle away and delivered it to B & W Chevrolet.
Subsequent to this surrender, Jewell Finn, sister of Otis Tarver, took title to the automobile by paying to B & W Chevrolet the amount of $2,287.22, the balance owed on the chattel mortgage.
As a result of the above circumstances, Marie Tarver has brought suit against Otis Tarver and Jewell Finn for wrongful conversion, seeking damages in the sum of $5,500.00.
The trial judge, in written reasons for judgment, concluded that the automobile was voluntarily surrendered by Marie Tarver to Deputy Rietzel, and also found defendant, Otis Tarver, was the legal owner of the vehicle at the time of the alleged conversion as no legal transfer of title had been effected. In ruling that title never passed to Marie Tarver, the District Court found that there was "an agreement to sell conditioned on the plaintiff assuming the responsibility of future payments."
The plaintiff has perfected this appeal, alleging the district court erred in sustaining the defense that title to the Chevrolet did not pass from the defendant to the plaintiff, and in holding that the vehicle was voluntarily released by, rather than unlawfully seized from, the plaintiff.
We are of the opinion the district court was in error in holding that title to the Chevrolet never passed to Marie Tarver. In effect, the trial judge denominated the elusive transaction between the plaintiff and her husband a conditional sale, under which title to the delivered automobile was to vest in the vendee only upon her compliance with the obligation of paying the remaining installments due on the vehicle. That a conditional sale is contrary to the law of Louisiana is so elemental that citation of authority is unnecessary.
In addition to urging a non-compliance with the provisions of the Vehicle Title Registration Statute, defendants urge the bill of sale executed by the Tarvers, in connection with their agreement concerning community automobiles, was invalid as a transfer as it was executed in blank.
The validity of this instrument is extraneous to a resolution of this case. Ownership of the vehicle had already passed to Marie Tarver. As this court stated in Baremore v. Southern Farm Bureau Casualty & Insurance Co., 147 So.2d 58 (La.App.2d Cir. 1962), "[t]itle to motor vehicles, although imperfect, may still be transferred in accordance with the provisions of LSA-C.C. art. 2456 as between the parties, even though the purchaser has not complied with the Certificate of Title Law."
The agreement between the Tarvers should be classified an exchange rather than a sale, as vehicles rather than money flowed from transferor to transferee. Each of the automobiles was a part of the marital estate prior to the separation of these parties. Although title to the Oldsmobile was in the name of the wife, while the title to the Chevrolet was in that of the husband, the exchange consisted of the wife's undivided one-half interest in the *377 Oldsmobile for the husband's identical interest in the Chevrolet.
Under LSA-C.C. art. 2661, bare consent of the parties is sufficient to effect an exchange. Article 2667 specifies that sales principles apply to contracts of exchange, and that the parties thereto are termed "vendor and vendee."
LSA-C.C. art. 2456 provides that the sale (exchange) of a movable is perfected and ownership transferred to the vendee "as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
Here, the parties admit the existence of an agreement as to object and price; therefore, the ownership of the Chevrolet fully vested in the vendee, Marie Tarver, at the time of the agreement.
This determination that the vehicle was owned by the plaintiff compels the conclusion that the seizure thereof by the sheriff at the request of the defendant, Otis Tarver, was clearly improper. We cannot agree with the trial judge's conclusion that this was a voluntary surrender. When an officer of the law, clothed in his official uniform and traveling in a marked patrol car, enters one's place of employment and "requests" the surrender of keys to an automobile, the ownership of which is disputed and the repossession of which is anticipated, the resulting release of the keys to him is hardly voluntary. It is apparent from the evidence that Deputy Rietzel was acting solely on behalf of Otis Tarver and at his request, which renders Tarver liable for the acts of his agent.
We find that defendant, Jewell Finn, was a completely innocent third party who merely seized upon an opportunity to purchase a good vehicle at a reasonable price and at the same time to save a close relative from the embarrassment of the repossession of a vehicle he was thought to own. No conspiracy has been proven. Being an innocent third party, Jewell Finn is entitled to retain this vehicle which the public records reflected that her vendor owned.
While there was a wrongful dispossession induced by the defendant, Otis Tarver, compensable damages suffered as a consequence by the plaintiff were minimal. In her petition, Marie Tarver set forth as damages the cost of purchasing another vehicle ($1,100.00), embarrassment and humiliation ($2,000.00), and the value of property converted with interest ($2,400.00), for a total alleged pecuniary entitlement of $5,500.00.
In reality, as a result of the seizure and sale of the vehicle, the plaintiff suffered a loss of at most $112.78, and probably less. James E. Brooks, president and general manager of B & W Chevrolet, and plaintiff's own witness, testified that at the time the automobile was returned to him its value was twenty-three or twenty-four hundred dollars.
While we see no basis for allowing the plaintiff to recover the purchase price of a new vehicle, she is entitled to nominal damages for embarrassment and humiliation. We consider a sum of $500.00 adequate.
For the foregoing reasons the judgment appealed from is reversed, and,
It is hereby ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Marie Joyner Tarver, and against the defendant, Otis Tarver, in the full sum of $500.00, together with legal interest from date of judicial demand until paid.
It is further ordered that the demands of the plaintiff against defendant, Jewell Finn, be rejected. Costs of these proceedings, including this appeal, are assessed against appellee.