314 So.2d 747 (1975)
Alfred GOMEZ
v.
SECURITY INSURANCE COMPANY OF HARTFORD.
No. 6235.
Court of Appeal of Louisiana, Fourth Circuit.
June 17, 1975.
*748 Rudolph R. Schoemann, New Orleans, for plaintiff-appellant.
Bienvenu & Culver, P. Albert Bienvenu, Jr., New Orleans, for defendant-appellee.
Salomon & Farmer, I. Bernard Salomon and Richard I. Farmer, New Orleans, for third party defendant-appellee.
Before LEMMON and STOULIG, JJ., and BOURG, J. Pro Tem.
LEMMON, Judge.
Plaintiff sued his automobile insurer under the comprehensive coverage of the policy, which included protection against loss caused by theft. The suit was dismissed after a trial on the merits, and plaintiff appealed.
The issue is whether or not the occurrence which caused plaintiff's loss constituted a theft for which the policy provided coverage.[1]
Plaintiff's version of the occurrence was: On the evening of Friday, May 21, 1971 Donald Rigger came to his home in response to a newspaper advertisement, which he had placed in an effort to sell the insured vehicle. After he, Rigger and a person identified as a mechanic took a test ride, Rigger indicated an interest in buying the car, wrote a check for $1,250.00, and asked to see the title as a precaution against liens. He showed Rigger the title but declined the check, stating he preferred to wait until Monday to complete the transaction. Rigger then asked permission to show the car to another mechanic and left but never returned. Unknown to him, Rigger had taken the title and left the check. (He explained he had endorsed the title in blank when his mother wanted to buy the car, but she later decided against it.) He then called the police who informed him that since Rigger had left a check for the sale price, they could not take action until the check was rejected by the bank. On Monday morning he learned at the bank that the check was drawn on an account that Rigger had opened an hour before their meeting the past Friday with a deposit of $25.00. (Testimony by a bank official established that Rigger wrote several other fraudulent checks over the weekend on that account, which the bank immediately closed.) He was unable to locate Rigger at the phony address but did find the vehicle at a used car lot. The dealer, who had the endorsed title (and a bill of sale, according to the testimony of the dealer and two policemen), refused to return the car, but at the suggestion of a policeman agreed to return the car to him upon payment of the sum $600.00, which was the amount the dealer had paid Rigger. After his insurer denied his claim for that sum, he filed this suit.

*749 I
Counsel for plaintiff argues that the evidence shows his client was taken by a "bunko" artist who knew the police would not pursue him immediately as long as he had left a check which purported to pay for the stolen car. On the other hand, defendant argues that the more reasonable factual finding from the evidence was that plaintiff and Rigger agreed to the sale of the automobile at $1,250.00, at which time the sale was completed (citing C.C. art. 2456), even though the check accepted as consideration turned out to be worthless. Defendant further contends that the trial judge, by rendering judgment for defendant, apparently found the latter interpretation to be more credible and rejected plaintiff's denial that he agreed to sell Rigger the car and accepted the check as payment.
We agree that plaintiff's version contains many improbabilities and unlikely coincidences. However, even if plaintiff's testimony is completely disregarded, the remaining evidence and the overall circumstances clearly establish that the occurrence was a taking under false pretenses rather than a sale.
The evidence taken as a whole is overwhelming that Rigger did not intend to buy the car for $1,250.00. His intention to permanently misappropriate the vehicle by means of fraudulent conduct was demonstrated by his opening the small bank account listing a false address, by his writing a large check on that account, and by his immediate sale of the car the next morning for less than half the amount of the check he left at plaintiff's home.
Since Rigger did not truly consent to buy the thing at the price set by plaintiff, the fact that plaintiff alone intended a contract of sale is not determinative. Both parties must agree on the thing and the price for a valid sale to be complete under C.C. art. 2456.[2] While the evidence indicates plaintiff consented to sell the car for $1,250.00, his consent to a sale to Rigger at that price was produced by Rigger's fraudulent conduct. Accordingly, there was no valid contract of sale.[3]
The case thus turns on the legal issue of whether Rigger's fraudulent acquisition of the vehicle constituted a loss to plaintiff caused by theft, as contemplated by the policy. The broad language of the policy does not exclude coverage when the theft is perpetrated by fraudulent conduct or false pretenses. Furthermore, since the provisions of an insurance policy are to be interpreted according to the natural import of the language used, we believe the common and usual signification of the word "theft" reasonably includes a taking by fraudulent conduct under circumstances which evidence an intent to steal. In any event, the use of the broad term without definition or limitation is ambiguous at best and must be construed against the insurance company. Finally, we find persuasive this state's legislative definition of the crime of theft in R.S. 14:67 as "the misappropriation or taking of anything of value which belongs to another ... by means of fraudulent conduct, practices, or representations."
We conclude all of the circumstances surrounding Rigger's taking of the car prove plaintiff's loss was caused by theft, and defendant is liable under the broad coverage of the policy. We further conclude plaintiff proved the amount of his *750 loss at $600.00, the sum he paid to prevent a total loss (by the dealer's sale to a third party) of the vehicle which he sold four months later for $1,250.00.

II
Plaintiff also sought recovery of penalties and attorney's fees under R.S. 22:658 on the basis that defendant's failure to pay the claim was arbitrary and without probable cause.
While plaintiff did not validly consent to the sale of the car, he did consent to Rigger's taking temporary possession of the car and either willingly or negligently allowed Rigger to obtain the title. Under such circumstances the courts of various jurisdictions have reached differing results in determining whether the comprehensive coverage clause afforded coverage. See generally 11 Couch, Cyclopedia of Insurance Law, §§ 42:269, 270 (2d ed. 1963); 5 Appleman, Insurance Law and Practice, §§ 3211, 3212 (1970); 48 A.L.R.2d 8 (1956).
R.S. 22:658 is penal in nature and must be strictly construed. Although we are clearly convinced that the policy provided coverage under the facts and circumstances of this case, we cannot say that the insurance company was arbitrary and capricious by insisting on its day in court to obtain a judicial determination of its interpretation of the policy provisions. Plaintiff's demand for penalties is therefore denied.

III
As subrogee to its insured's rights, defendant filed a third party petition against the used car dealer for the price plaintiff paid to recover the car. After plaintiff's appeal was lodged in this court, defendant answered the appeal to protect its rights under the third party demand in the event of reversal.[4]
In the incidental demand defendant stands in plaintiff's shoes and has no greater rights than plaintiff had. We conclude that under the facts of this case plaintiff (and therefore plaintiff's subrogee) is not entitled to recovery against the third party defendant.
By consenting to Rigger's temporary possession of the car and by willingly or negligently allowing him to obtain the title which was endorsed in blank, plaintiff provided Rigger with considerable indicia of ownership. On the other hand, the third party defendant reasonably believed Rigger (who had possession, title and a bill of sale) had acquired the automobile from plaintiff in payment of a debt.
Of the two innocent persons who dealt with the swindler, plaintiff was the more blameworthy, and his conduct made the accomplishment of the fraud possible. As between the two, plaintiff must suffer the burden of the loss. Flatte v. Nichols, 233 La. 171, 96 So.2d 477 (1957).[5] The third party demand by plaintiff's subrogee must therefore be dismissed.
For these reasons, that part of the trial court judgment which dismissed plaintiff's suit is reversed, and it is now ordered that judgment be rendered in favor of plaintiff and against defendant in the sum of $600.00, together with legal interest thereon *751 from the date of judicial demand (as prayed for) until paid, and for all costs. That part of the judgment which dismissed the third party demand is affirmed.
Affirmed in part, reversed and rendered in part.
NOTES
[1] Under the pertinent provisions of the policy's comprehensive coverage the company agreed as follows:

"To pay for loss caused other than by collision to the owned automobile or to a non-owned automobile. For the purpose of this coverage, breakage of glass and loss caused by * * * theft or larceny * * * shall not be deemed to be loss caused by collision."
[2] Sale is a contract which is subject generally to the laws of obligations. C.C. art. 2438. Consent of the parties is one of the essentials to a contract of sale. C.C. art. 2439. If the consent of one party is produced by force or fraud, the contract is invalid. C.C. art. 1819.
[3] In this respect we distinguish the case of Jeffrey Motor Co. v. Higgins, 230 La. 857, 89 So.2d 369 (1956), relied on by defendant. The Jeffrey case involved a suit to recover a stolen automobile from a good faith purchaser and turned on the seller's ratification of the transaction by acceptance of a draft payable in two days, which in effect converted the transaction to a credit sale.
[4] C.C.P. art. 2133, as amended in 1970, provides that an appellee may use an answer to an appeal to demand modification, revision or reversal of the judgment insofar as the judgment did not allow or consider an incidental demand filed in the trial court. Since the judgment dismissed its third party petition, defendant properly used an answer to plaintiff's appeal to bring before us for review that part of the judgment dismissing its incidental demand.
[5] In its argument against coverage defendant cited the Flatte case. The comprehensive insurer, however, does not have available the defense of estoppel which availed the good faith purchaser in that case. Comprehensive insurance is designed to protect the insured, whether or not his inadvertence contributed to the occurrence of the loss.