405 So.2d 354 (1981)
Al THERIAC d/b/a Atco Chemical Co., Plaintiff-Appellee,
v.
Allen McKEEVER, Defendant-Appellant.
No. 14656.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1981.
*355 Cook, Yancey, King & Galloway by F. Drake Lee, Shreveport, for plaintiff-appellee.
Gamm, Greenberg & Kaplan by Irving M. Greenberg, Shreveport, for defendant-appellant.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This action was brought seeking an adjudication that plaintiff was the owner of a truck and demanding damages from defendant for depriving plaintiff of possession of the truck. Defendant reconvened seeking damages for wrongful seizure of the truck, attorney's fees, and the purchase price of the truck if plaintiff was recognized as owner.
The trial court recognized plaintiff as owner of the truck and rejected the demands of plaintiff and defendant for damages. Costs were assessed to both parties. Defendant appealed and plaintiff answered the appeal. We amend and affirm.
The issues on appeal are: (1) the ownership of the truck, (2) the right to damages of either party, (3) defendant's claim for attorney's fees, and (4) the assessment of costs.
There are three principal participants in the circumstances surrounding this controversy. Plaintiff is Al Theriac who operated a chemical business. The defendant is Allen McKeever. James Pharr is an equipment dealer who sold the truck to Theriac.
In early August of 1979, Theriac was told by one of his employees that Pharr had a truck on his lot that looked suitable for the needs of the chemical business. Theriac then visited the lot of Pharr, a licensed dealer of heavy equipment and trucks. Theriac examined at least two trucks including a 1963 Kenworth Diesel Tractor on Pharr's lot.
Theriac decided the Kenworth would meet his needs and agreed on a price of $8,250. The price was to be paid after Theriac had obtained financing. Pharr agreed to allow Theriac to use the truck in the meantime.
When the truck was removed from Pharr's lot its absence aroused the interest of the defendant, McKeever. When McKeever learned that a sale of the truck to Theriac was planned he visited Theriac *356 at his place of business. McKeever testified that on his visit he told Theriac that the Kenworth was his and that Pharr had no authority to sell it. Theriac testified that McKeever applied for a job driving the truck.
Pharr's testimony indicated that Theriac may have been told that McKeever had also been interested in buying the truck. However, only McKeever's testimony indicates any knowledge prior to the sale on the part of Theriac of McKeever's claim of ownership of the truck.
On August 24, 1979 Theriac and Pharr visited the offices of the People's Bank & Trust Company to close the deal. Pharr produced a certificate of title in McKeever's name. In the blank for the signature of the seller was the signature of Allen McKeever. Pharr also had a bill of sale signed by McKeever. At trial McKeever did not deny that the signatures on these documents were his. The notary on both documents was James Pharr.
A certified check for the purchase price was issued to Pharr and Theriac signed a note for the loan. The bill of sale and certificate of title were completed to show Atco Chemical Company by Al Theriac as the purchaser of the vehicle. The bank then began taking the steps necessary to have a new certificate of title issued in Theriac's name.
A few days after the sale the truck was returned to Pharr's lot for minor repairs. The truck was taken from the lot by defendant McKeever without the consent of Theriac or Pharr. McKeever retained the truck until Theriac brought this action and had the truck seized under a writ sequestration.
Thus, we are presented here with a good faith plaintiff who bought the truck from a licensed dealer who had possession of the truck, an open certificate of title endorsed by the defendant, and a bill of sale signed by the defendant.
The Certificate of Title Law has a provision applicable to this type of transaction. LSA-R.S. 32:705 provides in part:
"On and after December 15, 1950, no person shall sell a vehicle without delivery to the purchaser thereof, whether such purchaser be a dealer or otherwise, a certificate of title issued under this chapter in the name of the seller with such signed endorsement of sale and assignment thereon as may be necessary to show title in the purchaser; provided:
(1) A dealer who is reselling a vehicle which he purchased for stock purposes from an owner who, at the time of purchase, delivered to the dealer an existing certificate of title issued under this chapter in the name of such owner, properly endorsed, may, in lieu of applying for and obtaining a new certificate of title in his own (the dealer's ) name, and delivering same to purchaser, instead execute a resale and reassignment of such existing certificate of title, with warranty of title."
We note that the present transfer from Pharr to Theriac does not squarely meet the requirements of this statute. The statute requires that the dealer be named as the party taking the vehicle from the registered owner and that the dealer then re-assign the title to the party buying the vehicle from him. Here the dealer is not named as receiving the vehicle from the registered owner. That space was left blank when McKeever signed, and plaintiff's name was filled in as buyer later on. The effect of the procedure used in this case is that the dealer's name never appears and the transfer appears to be from one non-dealer directly to another.
The existing jurisprudence makes it clear that mere failure to comply with the title law does not void the sale of a motor vehicle. It only prevents the title from being marketable. Transportation Equipment Co., Inc. v. Dabdoub, 69 So.2d 640 (La.App.Orl.1954); Hamner v. Domingue, 82 So.2d 105 (La.App. 1st Cir. 1955). It is important that the purpose of the law be considered. This circuit considered that in Ballard v. McBryde, 275 So.2d 464 (La. App.2d Cir. 1973), where it said:

*357 "We are of the opinion the Vehicle Certificate of Title Law is designed to afford the public a means of proper determination of ownership and encumbrance of vehicles subject thereto and to protect innocent purchasers who have relied thereon." Id. at 467.
In light of the purpose of the statute we believe that the failure of the transfer from Pharr to Theriac to strictly comply with the statute is unimportant. Our inquiry must focus on the situation existing before the transfer. The reliance here was on the appearance of a transfer from McKeever to Pharr and that is where the question of the ownership of the truck turns.
It is a principle of law that when one of two innocent persons must suffer loss it must be borne by the one whose conduct rendered the injury possible. Flatte v. Nichols, 96 So.2d 477 (La.1957). The conduct of McKeever allowed this situation to arise, therefore he, rather than Theriac, must bear the resulting loss.
The record is unclear as to how Pharr came to have the endorsed certificate of title and signed bill of sale. The testimony of Pharr makes it appear that title was placed in McKeever's name in an effort to aid him in obtaining financing to buy the truck. Perhaps the title was endorsed to enable Pharr to dispose of the truck if he found another buyer. McKeever's testimony is that Pharr was able to have the title mailed to him, and that he then tricked McKeever into endorsing it and signing the bill of sale. Either way it was the conduct, whether intentional or negligent, of McKeever that allowed Pharr to get an endorsed certificate of title, a signed bill of sale, and possession of the truck.
An endorsement transferring a certificate of title has the effect of transferring legal evidence of title. Bray's Cities Service v. Harvey, 113 So.2d 479 (La.App.2d Cir. 1959). McKeever, by endorsing the certificate of title and leaving it in Pharr's possession, armed Pharr with legal evidence of title. In addition to the endorsed certificate of title Pharr also had a signed bill of sale and possession of the truck. Pharr obtained all these indicia of ownership through McKeever's conduct.
Possession of the truck, a signed bill of sale, and the endorsed certificate gave Pharr all he needed to execute a transfer valid under LSA-R.S. 32:705 by simply filling in a few blanks. This is the situation that Theriac found and the one against which his claim must be judged.
Equitable estoppel arises where a person by his acts, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other rightfully relies and acts on the belief and will be prejudiced if the former is permitted to deny the existence of such facts. Travelers Ins. Co. v. United States Fidelity & G. Co., 168 So.2d 439 (La.App. 3d Cir. 1964); Baton Rouge Lumber Company v. Gurney, 173 So.2d 251 (La.App. 1st Cir. 1965). McKeever intentionally, under Pharr's testimony, or through failure to adequately supervise his affairs, under his own testimony allowed Pharr to get possession of the truck, a signed bill of sale, and an endorsed certificate of title. In short, McKeever, intentionally or through neglect, gave Pharr everything he would need to represent himself as entitled to sell the truck. This caused Theriac to believe that Pharr could sell the truck and Theriac acted on this belief. It is obvious that Theriac will be prejudiced if McKeever is now permitted to recover the truck which Theriac has purchased on the strength of facts which McKeever made to appear to be true.
Though Theriac himself may not have been deceived by the appearance created by the documents because he did not fully read and understand them, persons who would have protected his interests, the bank officials and the bank's attorney who were present when the deal was closed, must have relied on them and been deceived by them. If Pharr had not had the documents obtained from McKeever necessary to appear to be able to sell the truck, the bank would have refused to go through with the loan and Theriac would have been protected.
*358 We find that the doctrine of estoppel is applicable and that McKeever cannot now deny that Pharr could sell the truck. Therefore, we hold that the sale by Pharr to Theriac transferred ownership of the 1963 Kenworth to him and recognize that ownership.
This result is supported by the case of Tarver v. Tarver, 242 So.2d 374 (La.App.2d Cir. 1970). In Tarver the vehicle was a Chevrolet registered in the name of Mr. Tarver but transferred to his wife as part of the settlement of their community. Mrs. Tarver never had a certificate of title issued in her name. When Mrs. Tarver failed to make a payment on the car the finance company threatened proceedings against Mr. Tarver. When Mrs. Tarver did not cooperate in helping him clear up the matter Mr. Tarver persuaded a deputy to recover the vehicle for him. Mr. Tarver then sold the car to a good faith purchaser. The purchaser who had relied on the records was allowed to retain the car over Mrs. Tarver's demands.
Our decision is also supported by Gomez v. Security Insurance Company of Hartford, 314 So.2d 747 (La.App. 4th Cir. 1975). In Gomez the plaintiff was attempting to sell his insured car. He was approached by Rigger who expressed an interest in the car. Plaintiff allowed Rigger to take the car to be examined by a mechanic. Unknown to plaintiff Rigger also took the certificate of title which plaintiff had previously endorsed in blank. Rigger took the car, endorsed certificate of title to a used car lot, and sold the car to the dealer for $600. Rigger was never found but the dealer did sell the car back to plaintiff for the $600 he had paid for it. Plaintiff filed a claim with his insurer for the $600 which was rejected. Plaintiff then sued his insurer for the $600 and the insurer made a third party demand against the dealer.
For reasons not relevant here judgment was awarded in favor of plaintiff against the insurer. On the third party demand the insurer was said to stand in the shoes of its insured, the plaintiff. The court noted that by allowing Rigger to take the car and the title which had been endorsed in blank, plaintiff had given Rigger considerable indicia of ownership. The court concluded the used car dealer was reasonable in believing Rigger rightfully had the car, supposedly in payment for a debt. The court found that plaintiff's conduct was more responsible for the loss than that of the equally innocent car dealer and therefore rejected the insurer's demand against the dealer. This impliedly recognizes the ownership of the car by the dealer based on his reliance and belief on Rigger's possession of the car and endorsed certificate.
We believe it was even more reasonable for Theriac to believe that the truck belonged to Pharr, a licensed dealer possessing the truck, and endorsed certificate of title, and a signed bill of sale, than it was for the dealer to believe Rigger in Gomez.
We agree with the trial judge that Theriac should be recognized as owner of the truck.
Defendant alternatively demands the sales price of the truck if we recognize plaintiff as owner. We have recognized plaintiff's ownership, but we reject defendant's demand for the purchase price.
When one of two innocent persons must suffer a loss, it must be borne by the one whose conduct rendered the injury possible. Flatte v. Nichols, supra. For the reasons previously expressed we have found defendant's loss was caused by his own conduct. Under the rule of Flatte defendant must bear the loss. Defendant proposed that we extract another purchase price from plaintiff. To do so would shift the loss caused by defendant to plaintiff. This is contrary to Flatte and defendant's demand is accordingly rejected.
Defendant's demand for damages and attorney's fees based upon the contention that plaintiff wasn't entitled to seize the truck is without merit because plaintiff was the owner of the truck.
Plaintiff answered the appeal contending that the trial judge should have awarded him the $1000 general damages he sued for based upon the conversion of his *359 truck by defendant. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with owner's rights. Hamilton v. Travelers Indemnity Company, 248 So.2d 617 (La.App. 3d Cir. 1971). Here defendant went to Pharr's lot and took Theriac's truck without his knowledge or consent and held it until it was seized in connection with this suit. Defendant's conduct was a conversion of plaintiff's truck.
Plaintiff has proved that he suffered emotional upset as a result of the loss of the truck and for this reason we feel an award of general damages is appropriate.
General damage awards for the conversion of a vehicle range from $100 to $1000 in the following decisionsHamilton v. Travelers Indemnity Company, supra; Lee v. Lewis, 339 So.2d 513 (La.App.2d Cir. 1976); Brian v. Wilson, 81 So.2d 145 (La. App.2d Cir. 1955); Steadman v. Action Finance Corporation, 197 So.2d 424 (La. App.2d Cir. 1967); Tarver v. Tarver, supra. In view of the fact that the truck was not taken from plaintiff's immediate possession, and that the conversion was not done in any especially ostentatious way, we find that an award of $750 in general damages will adequately compensate plaintiff.
The trial court assessed costs equally against both parties and in his answer to the appeal plaintiff complains that all costs should be borne by defendant. We agree. Costs are to be assessed in accord with equity. LSA-C.C.P. arts. 1920 and 2164. We find in this case equity demands that costs be assessed against the defendant.
This action was precipitated by defendant's self-help confiscation of the truck. Both this court and the trial court have rejected every element of defendant's reconventional demand. For these reasons we find that defendant should bear all costs in both the trial and appellate courts.
For the reasons hereinabove set forth the fifth paragraph of the judgment is amended to read as follows:
"FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of AL THERIAC, d/b/a ATCO CHEMICAL COMPANY, and against defendant, ALLEN McKEEVER, in the amount of Seven Hundred Fifty and no/100 ($750.00) Dollars, together with legal interest from date of judicial demand until paid, and for all costs of court."
As AMENDED the judgment is AFFIRMED.