TURBO TRUCKING COMPANY, INC., Plaintiff-Appellant,

v.

THOSE UNDERWRITERS AT LLOYD'S LONDON, etc., et al., Defendants-Appellees.

No. 85–4252
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1985.

James W. Nobles, Jr., Jackson, Miss., Kellis L. Madison, Pearl, Miss., for plaintiff-appellant.

Watkins & Eager, Richard T. Lawrence, Jackson, Miss., for Lloyd's.

Daniel, Coker, Horton & Bell, Roy A. Smith, Jr., Thomas A. Bell, Jackson, Miss., for Darrah & Tractor-Trailer.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

This appeal poses a single question: under Mississippi law, is an unsigned salvage endorsement, included in the insurance policy folder when delivered to the insured, to be considered as part of the policy? In granting summary judgment to the defendants the district court answered that question in the affirmative. Agreeing, we affirm.

### FACTS

The parties concur that there is no genuine issue of material fact extant. The facts are essentially stipulated. Defendant underwriters, through their agent Will Darrah & Associates, Inc., issued Turbo Trucking Company, Inc. a policy providing physical damage insurance for its vehicles. During the policy period, two Peterbilt tractors and one Timpte trailer sustained damage. The amount of damages is not in dispute. Totalling the damages, plus a portion of the wrecker charges less deductibles, Turbo claimed $63,532.01 under the policy. Accepting Turbo's damage assessment, but contending that they are entitled to the salvage value of the vehicles, the amount of which is not disputed, defendants contend that they owe, and they deposited in the registry of the court, the sum of $49,397.15. The district court accepted defendants' interpretation of the policy and rendered summary judgment accordingly.

The eight-page policy was stapled to the back of a manila folder. The folder is an integral part of the insuring agreement. General insurance provisions, including definitions, exclusions, and conditions, are found on both inside covers and on the rear outside cover. The front of the folder carries the identifying title "Automobile Physical Damage Insurance" and reflects the names of the underwriters' agent, their local agent, and also includes an invoice for the policy.

A page entitled "Application of Salvage Endorsement" was inserted in the policy packet behind the eight pages. The paragraph upon which this appeal turns is centered on this page in bold-faced type:

**"APPLICATION OF SALVAGE: IN THE EVENT OF LOSS, THE UNDERWRITERS MAY, AT THEIR OPTION, PAY THE AMOUNT STATED IN THE LIMIT OF LIABILITY IN THE SCHEDULE, LESS THE DEDUCTIBLE, AND SAID PAYMENT SHALL ENTITLE THE UNDERWRITERS TO ALL SALVAGE RESULTING AFTER LOSS."**

This endorsement contains no other identifying language or signature but it was included in the policy packet when issued by the underwriters. The affidavit of the underwriters' agent attests that the application of salvage endorsement is a part of every physical damage policy issued by the underwriters in Mississippi.

Turbo maintains that the salvage endorsement should not be considered a part of the policy because it is neither signed nor specifically identified to the body of the policy and because it is ambiguous and in conflict with policy provisions. The district court found that the endorsement was readily apparent upon a cursory examination of the policy, that it was a part of the policy, and that its terms were controlling, clear, and unambiguous.

## ANALYSIS

The issue presented is a question of law subject to full appellate review. *Chevron U.S.A., Inc. v. Belco Petroleum Corp.*, 755 F.2d 1151 (5th Cir.1985). In our review we are mindful of the admonition that the court should eschew any interpretation of a policy which would render meaningless a policy provision. *Sekel v. Aetna Life Insurance Co.*, 704 F.2d 1335 (5th Cir.1983).

In this diversity case, as an *Erie* court we are bound to apply the substantive law of Mississippi. Neither brief cites dispositive Mississippi law. Our independent research discloses none. We must therefore do what a lower Mississippi court would do, predict the course of the Mississippi Supreme Court. *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir.1985). In that effort, "[a]bsent evidence to the contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so." *Hensley v. E.R. Carpenter Co., Inc.*, 633 F.2d 1106, 1109 (5th Cir.1980); *United States v. Southeast Mississippi Livestock Farmers Association*, 619 F.2d 435 (5th Cir.1980).

The general rule concerning unsigned endorsements delivered with the policy is chronicled in 43 Am.Jur.2d verbo Insurance § 296 at 374:

Thus, unsigned riders attached to the policy at the time of the delivery to the insured become a part of the policy, notwithstanding a provision in the policy that indorsements must be signed by the insurer, since such a provision applies only to alterations in written indorsements after the delivery of the policy to the insured, and the signing of the policy is a signing of all riders properly attached to the policy at the time of signing.

Mississippi law charges the insured with knowledge of the terms of the policy. *Zepponi v. Home Ins. Co.*, 248 Miss. 828, 161 So.2d 524 (1964). The Mississippi Supreme Court has enforced endorsements attached to insurance policies but it has not addressed specifically the requirements necessary for the finding that an endorsement is part of a given policy. *See Camden Fire Insurance Association v. New Buena Vista Hotel Company*, 199 Miss. 585, 24 So.2d 848 (1946); *Stewart v. American Home Fire Insurance Company*, 211 Miss. 523, 52 So.2d 30 (1951). Citing these cases, the district court opined that the Mississippi Supreme Court would adopt the reasoning in *Dunn v. Traders & General Ins. Co.*, 287 S.W.2d 682, 687 (Tex.1956) which held:

It is well established in Louisiana, Texas, and generally, that riders attached to a policy, when delivered, are properly treated as a part thereof, though not independently signed; as the policy signatory is inclusive of all riders.

In a diversity case, applying Louisiana law, we enforced an endorsement which was attached to the policy but which was not referred to on its face. *Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900 (5th Cir.1972); *see also Petrowski v. Hawkeye-Security Ins. Co.*, 237 F.2d 609 (7th Cir.1956), *cert. denied*, 352 U.S. 972, 77 S.Ct. 364, 1 L.Ed.2d 325 (1957) (recognizing the general rule that an endorsement issued with the original policy forms an integral part of the policy). We follow the lead of the district judge, schooled and skilled in the law of his state, *Avery v. Maremont Corp.*, 628 F.2d 441 (5th Cir.1980), and conclude that Mississippi's highest court would find the instant salvage endorsement an integral part of the policy. The endorsement is conspicuous, it refers to the main policy, and it was included with the original standard form packet when the policy of insurance was issued to Turbo. We conclude, as a matter of law, that the salvage endorsement is a part of the Turbo policy.

We find no merit in Turbo's contention that the endorsement is ambiguous and conflicts with the policy. We find the language clear and unambiguous, and, as such, subject to enforcement in accordance with its plain terms. *George v. Mississippi Farm Bureau Mut. Ins. Co.*, 250 Miss. 847, 168 So.2d 530 (1964). Nor do we find any conflict between the language of the endorsement and that in the policy text. If

**530**

such a conflict existed it would gain Turbo naught; the endorsement would control. *Stewart v. American Home Fire Insurance Company; Camden Fire Insurance Association v. New Buena Vista Hotel.* The result would be the same.

AFFIRMED.