**EXCHANGE OIL & GAS CORPORATION, Plaintiff-Appellee,**

v.

**GREAT AMERICAN EXPLORATION CORPORATION,
Defendant-Appellant.**

**No. 85–3720**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 16, 1986.

Opinion on Denial of Rehearing and Rehearing En Banc July 9, 1986.

Monroe & Lemann, Michael R. O'Keefe, III, New Orleans, La., for defendant-appellant.

Chaffe, McCall, Phillips, Toler & Sarpy, Charles L. Chassaignac, Raymond G. Hoffman, Jr., Mary Lynne Friedman, New Orleans, La., for plaintiff-appellee.

Before RUBIN, REAVLEY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this diversity case defendant Great American Exploration Corporation (Great American) appeals from a judgment entered in favor of the plaintiff Exchange Oil & Gas Corporation (Exchange). Finding that the district court correctly applied Louisiana law and that its findings are not clearly erroneous, we affirm.

## I.

On September 9, 1980, Exchange entered in a joint operating agreement with Hunt Energy Corporation and other Hunt family interests (collectively Hunt) to develop certain oil and gas leases in West Feliciana Parish, Louisiana. Hunt agreed to serve as the drilling operator and Exchange agreed to pay a portion of the drilling costs. After first drilling a successful exploratory well, Exchange and Hunt decided to drill a second well, the Georgia-Pacific B-1 well (B-1 well), a development well, to a depth of approximately 18,000 feet.

In March 1982, after drilling the B-1 well to a depth of approximately 12,000 feet, Hunt decided that it no longer wished to continue drilling the well or participating further in the development of the well. Exchange advised Hunt that it would not permit Hunt to withdraw from its obligations unless Exchange could take over as successor operator and unless Hunt assigned all of its interest in the lease containing the well to Exchange. Hunt agreed to assign all of its interest to Exchange and revealed to Exchange for the first time that it had previously assigned twenty-five percent of its interest to Great American. The agreement between Hunt and Great American required Great American to pay its proportionate share of drilling costs. Great American chose not to abandon the project and assign its interest to Exchange as did Hunt, rather, on March 16, 1982, Great American orally agreed with Exchange to continue with the project and to pay its proportionate share of the drilling costs. However, Great American did not sign or return either of the two written agreements sent to it by Exchange. Exchange billed Great American monthly for the costs incurred in drilling the well; while Great American did not pay the bills, it did not notify Exchange that it did not plan to pay the bills. Exchange also forwarded, at Great American's request, confidential electrical logs, surveys, mud logs, ore analyses, and daily drilling reports to Great American. Operators typically make these confidential materials available only to participants in a project.

In July 1982, after it became apparent that the B-1 well would be a dry hole, the executive vice president of Great American, Scott Holyfield, advised Exchange that Great American, because of its financial inability to do so, would not honor Exchange's requests for payment of Great American's share of the drilling costs. Exchange brought suit alleging, *inter alia,* that the doctrine of equitable estoppel prevented Great American from asserting that the oral agreement between Exchange and Great American was unenforceable for failure to be in writing. Following a one-day bench trial the district court found for Exchange on the theory of equitable estoppel and entered judgment against Great American for the stipulated amount of its share of the drilling costs. Great American appeals.

## II.

Great American levels two attacks against the judgment of the district court. First, Great American argues that the district court erred in finding that it could apply equitable estoppel to the facts of this case. Second, Great American argues that the district court's determination as to one of the elements of an equitable estoppel claim, detriment, was clearly erroneous.

### A.

■ Great American correctly points out and cites several cases for the proposition that equitable estoppel cannot be used to affect title to immovables,[1] including minerals. Great American then proceeds to argue that the oral agreement between the parties affects title to immovables and that, therefore, a court cannot apply equitable estoppel to hold Great American liable for any damages due to the oral agreement. We disagree.

The oral agreement between the parties does not affect title to immovables. Previous leases and agreements determined the parties' interests in the minerals. Great American owned an undivided twenty-five percent of Hunt's prior interest in the minerals, and Exchange owned the remainder

---

1. Great American relies on the following cases: *Inexco Oil Co. v. Crutcher-Tufts Corp.,* 389 F.Supp. 1032, 1039 (W.D.La.1975); *Hayes v. Muller,* 245 La. 356, 158 So.2d 191, 198 (1963) (on rehearing); *Blevins v. Manufacturers Record Publishing Co.,* 235 La. 708, 105 So.2d 392, 414 (1957) (on rehearing); *Wilkins v. Hogan Drilling Co.,* 424 So.2d 420 (La.Ct.App.1982); *Guy Scroggins, Inc. v. Emerald Exploration,* 401 So.2d 680 (La.Ct.App.), *writ denied,* 404 So.2d 1257 (La. 1981).

of the working interest. The oral agreement between the parties did not affect ownership of or title to the mineral interests; instead, the agreement merely concerned how the parties would divide the costs of drilling the well. The parties' interests in the well would remain the same no matter how they divided the costs.

The official comment to section 16 of the Mineral Code, La.Rev.Stat.Ann. § 31:16 (West 1975), further bolsters our conclusion. The comment states:

There are many types of transactions which may create interests which should be regarded as mineral rights and, therefore, real rights.... On the other hand, many contracts are personal in nature (*e.g.*, drilling contracts) though they may be closely related to the development or exploitation of property for mineral production.

The comment expressly declares that drilling contracts are personal in nature rather than involving title to immovables. Louisiana law provides that the reporter's comments are persuasive in determining legislative intent. *State v. Ward*, 482 So.2d 182, 183 (La.Ct.App.1986); *see also Thigpen v. Boswell*, 465 So.2d 865, 867 (La.Ct. App.1985); *Robinson v. North American Royalties, Inc.*, 463 So.2d 1384 (La.Ct. App.), *modified*, 470 So.2d 112 (La.1985) (per curiam).

The oral agreement between Exchange and Great American represents nothing more than a drilling contract. Great American owned twenty-five percent of Hunt's interest, and Great American agreed to pay a percentage of the drilling costs in order to have its interest developed. Thus, since the parties made an oral agreement concerning drilling expenses, and since drilling agreements do not concern title to immovables, the district court acted correctly in applying the doctrine of equitable estoppel to the facts of the case.

## B.

Great American next argues that, if the district court may apply equitable estoppel, the court made an erroneous factual finding when it found that all of the elements of equitable estoppel occurred. When considering whether a factual finding is clearly erroneous, we apply the standards recently reaffirmed by the Supreme Court:

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind their function is not to decide factual issues de novo." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

*Anderson v. City of Bessemer City*, ___ U.S. ___, 105 S.Ct. 1504, 84 L.Ed.2d 518, 528 (1985).

To recover under a theory of equitable estoppel the plaintiff must establish three requisite elements: (1) a representation by conduct or word, (2) justifiable reliance, and (3) detriment due to the reliance. *Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975); *Theriac v. McKeever*, 405 So.2d 354, 357 (La.Ct.App.1981); *Duthu v. Allements' Roberson Machine Works, Inc.*, 393 So.2d 184, 186 (La.Ct.App.1980). Great American does not challenge the district court's finding that the first two elements existed; however, it does challenge the district court's finding that the third element existed. Great American argues that Exchange incurred no detriment because Exchange was prepared to bear all the costs of drilling once Hunt withdrew from the

venture; thus, Great American's refusal to honor its oral agreement caused Exchange no detriment that it would not have incurred had Great American had chosen not to remain in the project. In other words, if Great American had chosen not to stay in the project, Exchange would have paid all the expenses to complete the well just as they ended up doing when Great American refused to pay its share of the expenses.

■ The district court made the following finding with respect to the detriment element:

> The detriment included the lost opportunity of Exchange to insist that GAE [Great American] either opt out of the Georgia-Pacific B-1 Well, as Exchange allowed Hunt to do, or require that GAE execute its written commitment for continued participation in the well by signing the March 15, 1982 Letter Agreement and assigning its (GAE) interest in the leases in the area of mutual interest. The detriment is clear, GAE, by representing to Exchange its agreement to continued participation in the well and by confirming that agreement by executing a written document to receive confidential well information and by further confirming that agreement by failing to take any affirmative action protesting interim bills it received from Exchange for its proportionate share of drilling expenses, GAE gained a substantial advantage, to the detriment of Exchange of being able to wait until the drilling was completed and with geological hindsight decide whether it wished to risk any venture capital.

We find the district court's finding plausible in light of the evidence. Exchange suffered detriment at the time of the oral agreement because it lost the opportunity to gain control of the entire working interest. Exchange could have then sold the interest to another party or retained the interest, and, if the well was successful, retained all the proceeds for itself. Exchange suffered further detriment when, after allowing Great American to retain its interest, Exchange received no reimbursement for the expenses it incurred in drilling the well partially on Great American's behalf. Since we find the district court's finding entirely plausible, the finding is not clearly erroneous. Accordingly, we affirm the district court's judgment.

AFFIRMED.

## OPINION ON REHEARING

PER CURIAM:

Appellant Great American Exploration Corporation (Great American) now brings to the attention of the Court a recent decision of the Court, *Sonat Exploration Co. v. Mann*, 785 F.2d 1232 (5th Cir.1986), and argues that *Mann* controls the result in the instant case. We disagree.

In *Mann*, a Mississippi diversity case, the plaintiff operator claimed that the defendant had agreed to pay a percentage of the drilling costs. The plaintiff relied on an Authorization for Expenditure (AFE) signed by the defendant as evidence that an agreement existed. The district court found that the AFE did not prove that an agreement existed and we affirmed. Our case is distinguishable. In the instant case the district court found, based on the testimony at trial, that the parties orally agreed to share the drilling costs and that equitable estoppel prevented Great American from asserting that the oral agreement between the parties was unenforceable for failure to be in writing. We concluded, based on Louisiana law, that a drilling contract was personal in nature and therefore did not have to be in writing. We then affirmed the district court's factual findings on the elements of an equitable estoppel claim. The two cases are distinguishable based on the facts that the district court relied on in concluding that an agreement existed; therefore, *Mann* does not control the result in the instant case.

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestion for Rehearing En Banc is DENIED.