**Donald F. WILSON, By and Through his mother, Guardian and Next Friend, Linda C. WILSON, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, Defendant-Appellee.**

No. 87–4382

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1987.

John L. Hunter, David O. McCormick, Pascagoula, Miss., for plaintiff-appellant.

George M. Simmerman, Jr., Raymond L. Brown, Pascagoula, Miss., for defendant-appellee.

Before REAVLEY, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

Plaintiff appeals the district court's decision to enter summary judgment in favor of defendant, an insurance company, in plaintiff's suit to recover under an insurance contract, 659 F.Supp. 553. In addition, plaintiff challenges the district court's decision denying his cross-motion for summary judgment. Because the district court correctly concluded that plaintiff cannot recover under the insurance contract because of an exception to coverage provision contained in the contract, we affirm the district court's judgment.

## I.

On April 23, 1983, Donald F. Wilson ("Wilson") was riding as a passenger in a car driven by Deborah K. Smith ("Smith"). During the ride, Smith lost control and the car left the highway, colliding with a utility pole. Wilson was injured. After the accident, Wilson brought suit against W.M. Williams, Jr. ("Williams"), d/b/a Williams & Sons Convenience Store, in Mississippi state court ("Suit I"). Wilson charged that prior to the accident, Williams' convenience store negligently sold beer to Smith—who was a minor—in violation of section 67–3–53(b) of the Mississippi Code of 1972. As a result of the sale, Wilson alleged, Smith became intoxicated; Smith's intoxication, in turn, became a proximate, contributing cause to the accident and, therefore, to Wilson's injuries.

At the time of the accident, Williams owned both a liquor store and an adjacent convenience store. Both were insured under a liability insurance policy issued by United States Fidelity and Guaranty Company ("USFG"). Consequently, after Wilson filed Suit I against Williams, Williams made demand under the insurance policy for USFG to defend the lawsuit. USFG, however, refused Williams' demand. According to USFG, the insurance Williams purchased, as explained by an exclusionary clause in the policy ("exclusion provision"), did not provide either Williams or his businesses coverage under the circumstances which gave rise to Suit I. Faced with USFG's position, Williams proceeded with his own defense. He hired counsel and, sometime later, entered into a settlement agreement with Wilson. Under the settlement, Williams assigned to Wilson all his rights under the insurance policy, agreed to pay Wilson $7,500 over a one-year period, and agreed to withdraw his answer in Suit I so that Wilson could take a default judgment; for his part, Wilson agreed not to enforce the default judgment against Williams as long as Williams adhered to the agreement's terms. Subsequently therefore, as contemplated by the settlement agreement, Wilson obtained a default judgment in the amount of $8,400,000.00 against Williams.

Williams, however, was dissatisfied with USFG's restrictive interpretation of the terms of his insurance policy. Therefore, after signing the settlement agreement in Suit I, Williams sued USFG in the United States District Court for the Southern District of Mississippi ("Suit II"), alleging that when faced with Suit I, USFG wrongfully and in bad faith denied its liability under the insurance policy. USFG defended by asserting in district court the same argument it made to Williams at the time it declined to become involved in Suit I—that the insurance policy Williams purchased explicitly excludes coverage for liability attaching to the insured as a consequence of selling alcoholic beverages. Williams, in response, argued that as a matter of law in Mississippi, beer is not an "alcoholic beverage." USFG filed a motion for summary judgment which, on July 15, 1986, was granted by the United States Magistrate before whom it was presented. As the basis for his decision, the magistrate expressly found that the phrase "alcoholic beverage," as used in the insurance policy, includes beer. No appeal was taken from the magistrate's judgment.

Meanwhile, as Suit II was developing, Wilson decided to try to collect under the insurance policy from USFG the default judgment he obtained against Williams in Suit I. Consequently, on July 24, 1985, Wilson filed—also in the United States District Court for the Southern District of Mississippi—his "Suggestion for Writ of Garnishment and Complaint" against USFG ("Suit III").[1] USFG answered, again asserting the now familiar exclusion provision as a defense to liability. Wilson initiated discovery, and both sides agreed that the exclusion provision would control USFG's responsibility to Wilson in Suit III. With the issue therefore narrowed to a

---

**1.** It might be questioned whether, because of the judgment entered in Suit II, issue preclusion or claim preclusion should prevent Wilson from relitigating the question of the applicability of the exclusion provision. However, the question was not raised here or in the court below. Therefore, we do not consider it.

question of contract interpretation, both USFG and Wilson filed motions for summary judgment with the court.

In its motion, USFG once again pointed out that the insurance policy Williams purchased explicitly excludes coverage for liability attaching to the insured as a consequence of selling alcoholic beverages. Therefore, USFG concluded, the policy does not cover liability occurring as a result of Williams' sale of beer to Smith. Wilson countered with the same argument Williams made, without success, in Suit II—that as a matter of law in Mississippi, the term "alcoholic beverage" does not include beer. Possibly worried that this argument might be received by the court in Suit III as it was in Suit II, however, Wilson also added a new argument. According to Wilson, the exclusion provision upon which Suit III is focused is ambiguous in at least two respects: first, because the phrase "alcoholic beverage" can be construed to either include or exclude beer and second, even assuming that the phrase "alcoholic beverage" includes beer, because a dependent clause contained in the provision can be read to modify two different phrases, each with a different object. Each ambiguity, Wilson argued to the district court, can be resolved in a way which results in coverage for Williams under the insurance policy. Consequently, since in Mississippi ambiguities must be construed in favor of the insured, Wilson concluded, the district court should construe the exclusion provision not to deny coverage in this case.

The district court carefully reviewed the arguments made by USFG and Wilson and, in a memorandum opinion filed April 13, 1987, granted USFG summary judgment and denied Wilson's cross-motion. In its opinion, the district court explained that "the Court determines that the rationale which prompted the granting of [USFG's] summary judgment motion in [Suit II] is just as applicable here, and so adjudges that [USFG's] instant motion should be granted and [Wilson's] motion denied on that basis alone." However, the court also "alternatively" concluded that "Mississippi caselaw and statutory authority likewise warrant the same result." Specifically, the

court concluded that the phrase "alcoholic beverage" does not exclude beer as a matter of law in Mississippi, and that the exclusion provision in the insurance policy is not ambiguous in either of the ways asserted by Wilson. On April 27, 1987, the court entered a judgment granting USFG's motion for summary judgment, and dismissing Wilson's suit "at the cost of the Plaintiff." Wilson now challenges the court's ruling and, on appeal, both Wilson and USFG reargue the issues presented to the court below in Suit III and to the federal magistrate in Suit II. We now take our turn at reviewing them, and conclude—as both courts before us have—that because of the exclusion provision, the insurance policy USFG sold to Williams does not cover the liability Williams incurred in Suit I.

## II.

We begin by noting the applicable standard of review and the applicable law to which the standard must be applied. When an appeal is taken from a summary judgment, we review the record under the same standards the trial court applied to determine that summary judgment was appropriate. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). Therefore, we must determine whether the record of this case demonstrates that "there is no genuine issue as to any material fact" and that USFG is "entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c); *see Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Normally, this means that we review the facts in a manner which draws all inferences most favorable to the party opposing the motion. *Reid*, 748 F.2d at 578. In this case, however, the facts are not in dispute. Both USFG and Wilson agree that the exclusion provision of the insurance policy, when its meaning is ascertained, controls the disposition of the case. Contract interpretation, including the determination as to a contract's facial ambiguity, is a question of law. *Id.* Therefore, we must subject to full appellate review the arguments USFG and Wilson raise. *See id.; Turbo Trucking Co. v. Those Un-*

*derwriters at Lloyd's London,* 776 F.2d 527, 529 (5th Cir.1985). Moreover, because we have jurisdiction in this case on the basis of diversity between the parties, we are *Erie*-bound to apply the substantive law of Mississippi.

Before addressing the arguments Wilson and USFG raise, we set forth the provision of Williams' insurance policy upon which so much attention has focused:

Exclusions

This insurance does not apply:

. . . . .

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above.

Wilson first argues that this provision does not apply to Wilson's claim against USFG under the policy. As Wilson explains, Williams' liability in Suit I—the judgment from which Wilson seeks to enforce here in Suit III—was premised on the sale of beer to Smith. According to Wilson, however, the phrase "alcoholic beverage" as it appears in the exclusion provision must be construed as a matter of law not to include beer. Wilson arrives at this counterintuitive conclusion by way of section 67–1–5 of

the Mississippi Code of 1972 and *Boutwell v. Sullivan,* 469 So.2d 526 (Miss.1985). Chapter 1 of title 67 to the Mississippi Code directs that:

For the purposes of this chapter and unless otherwise required by the context:

(a) The words "alcoholic beverage" mean any alcoholic liquid ... capable of being consumed as a beverage by a human being, but shall not include ... beer containing not more than four percent (4%) alcohol by weight, as provided for in section 67–3–5.

Miss.Code Ann. § 67–1–5 (Supp.1986). This statutory language, Wilson explains, has been both recognized and applied by the Mississippi Supreme Court. In *Boutwell,* the court explicitly relied on the language excluding beer from the definition of "alcoholic beverage" to permit a social host to escape liability under a provision of the Mississippi Code which makes it illegal for a person to sell an "alcoholic beverage" to someone who is visibly intoxicated. 469 So.2d at 528; *see* Miss. Code Ann. § 67–1–83(1) (Supp.1986). By applying the definition contained in section 67–1–5 to section 67–1–83(1), Wilson concludes, the Mississippi Supreme Court was making it "clear that under the law of the State of Mississippi when 'alcoholic beverages' are being defined ... the word does not include beer." What Wilson asks us to find, therefore, is that when the statutory language is combined with the supreme court's opinion in *Boutwell,* the result is that the phrase "alcoholic beverage" must be read whenever and wherever it appears—be it in another Mississippi statute or in a contract unrelated to any statute—to exclude beer. We do not believe, however, that through *Boutwell* the Mississippi Supreme Court intended the result Wilson urges. Instead, we read the court in *Boutwell* as doing nothing more than following the explicit mandate of the statutory language: for purposes of chapter 1 of title 67, the phrase "alcoholic beverages" must be read to exclude beer. Given this statutory mandate, the Mississippi Supreme Court had no choice but to read the phrase to exclude beer because it was interpreting the phrase as it appeared *in another section of the*

*statute which was part of chapter 1.* In contrast, we are faced with interpreting the phrase as it appears in an insurance contract completely unrelated to the statute. And the job of contract interpretation in Mississippi comes complete with its own set of mandates.

It is well settled that "under Mississipi law, words of a contract are to be given their ordinary meaning." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir.1985); *Owen v. Gerity*, 422 So.2d 284, 288 (Miss.1982); *Continental Casualty Co. v. Hester*, 360 So.2d 695, 697 (Miss. 1978). The true question before us, therefore, is what "ordinary meaning" the phrase "alcoholic beverage" carries. Specifically, we must determine whether "beer" is ordinarily included within the connotation of "alcoholic beverage." We believe that to ask the question is to answer it. As the federal magistrate in Suit II explained, and the court below specifically agreed, "the only common and ordinary meaning [of the phrase 'alcoholic beverage'] that this Court is aware of ... is that it refers to a beverage containing alcohol." Memorandum Opinion, *Williams v. United States Fidelity & Guar. Co.*, No. S85–0660 at 4 (S.D.Miss. July 15, 1986). Moreover, "[t]here is no definition of the word 'beer' which fails to acknowledge that it is a liquor or beverage containing alcohol." *Id.* (citing dictionary definitions). Consequently, "[s]ince beer is a beverage containing alcohol, it is clearly included in the common and ordinary meaning of alcoholic beverages." *Id.* We conclude therefore, as two courts have done before us, that the phrase "alcoholic beverage" does not as a matter of law in Mississippi exclude beer when the phrase is used outside of chapter 1 of title 67 of the Mississippi statutes.[2]

Wilson, however, argues that even if the phrase does not as a matter of law exclude beer, it does cause another problem. Because in at least one context the phrase must be construed as excluding beer, Wilson urges, the use of the phrase in Williams' insurance policy makes the policy ambiguous. When the terms of an insurance policy are ambiguous, Wilson continues, Mississippi law requires that the policy be construed against the insurer. Therefore, even though the phrase may not always have to be read to exclude beer, Wilson concludes, Mississippi law requires it to be so read in this case. Wilson's argument, however, is flawed. As we stated earlier, words of a contract must be given their ordinary meaning. Moreover, "[w]here the intentions of the parties to an instrument appear clear and unambiguous from the instrument itself, the court should look solely to the instrument and give [the instrument] effect as written." *Barnett v. Getty Oil Co.*, 266 So.2d 581, 586 (Miss. 1972). An ambiguity exists, therefore, only if it is apparent from the face of the contract—that is, only if it arises from the process of attributing an ordinary meaning to a particular word or phrase as it is used in the contract. In this case, we have agreed with the courts who considered the question before us that the ordinary meaning of the phrase "alcoholic beverage" includes beer. Wilson, however, would have us find that the phrase "alcoholic beverage" has two ordinary meanings—one which includes beer and one which excludes beer—all as a result of the specialized definition the legislature adopted for purposes of the statute. This we decline to do. More precisely, we refuse to conclude that a specialized definition appearing in one section of a state statute can, without more, properly be said to infuse an otherwise clear and certain phrase with ambi-

---

**2.** Our conclusion is also supported by language in Mississippi Supreme Court opinions which suggest that the supreme court generally considers beer to be an alcoholic beverage. *See, e.g., Cuevas v. Royal D'Iberville Hotel*, 498 So.2d 346, 348 (Miss.1986) ("Munford was guilty of negligence per se in selling the alcoholic beverages [of beer] to the minors."); *Munford, Inc. v. Peterson*, 368 So.2d 213, 216 (Miss.1979) ("Chap-

ter 3, Title 67 of the Mississippi Code Annotated (1972) ... relates to the sale of light wine, beer and *other alcoholic beverages.* ") (emphasis added). To the extent that this language may suggest that the supreme court in *Boutwell* was not, as Wilson claims, defining "alcoholic beverage" for all purposes as excluding beer, we find it persuasive.

guity. In our view, calling the specialized definition incorporated into the statute "ordinary" is a contradiction in terms.

Wilson's final argument also focuses on what he characterizes as an ambiguity in the insurance contract. This time, Wilson claims, the ambiguity arises in subsection (2) of the exclusion provision. The relevant portions of the provision provide:

This insurance does not apply:

.　.　.　.　.

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes....

Through a rather complicated grammatical analysis—much of which is not clearly explained—Wilson reaches the conclusion that the second exception detailed in the exemption provision can be construed either to provide or deny coverage, depending on which phrase the dependent clause contained in subsection (2) is read to modify.[3] We find it unnecessary, however, to unravel and consider the intricacies of Wilson's argument. As written, the exclusion provision clearly provides two independent circumstances where the policy does not apply. The first circumstance is where the insured is held liable as a person or organization engaged in the business of manufacturing, distributing, selling, or serving alcoholic beverages. The second circum-

stance—on which Wilson focuses his ambiguity analysis—is connected to the first circumstance by a disjunctive "or." Consequently, coverage can be denied if *either* the first circumstance or the second circumstance is met.

In this case, liability was imposed upon Williams in Suit I as a result of a default judgment which is not part of the record before us. However, the record does contain a copy of the complaint Wilson originally brought against Williams in Suit I. The complaint alleges that "[O]n or about the evening of April 22, 1983, ... the Defendant *did sell* to a person under eighteen (18) years of age, to-wit: Deborah K. Smith, now Deborah K. Smith Keenum, beer." 1 Record at 153 (emphasis added). In addition, the complaint "charges the Defendant with specific violation of Section 97–3–53(b) [sic] of the Mississippi Code of 1972, Annotated, in some if not all of the following specific acts: (a) *Selling,* giving or furnishing beer ... to any person under the age of 18 years." *Id.* at 154 (emphasis added). The pleadings upon which the default judgment was entered, therefore, support the conclusion that Williams' liability was premised on selling alcoholic beverages, as envisioned by subsection (1) of the exclusion provision. This conclusion is also supported by Williams' affidavit, which Wilson attached to his motion for summary judgment below. In the affidavit, Williams confirms that at the time of the accident, he was the owner of a convenience store which "did business" selling beer. *Id.* at 131–32. We find, therefore, that the unambiguous terms of subsection

---

**3.** According to Wilson, the clause "if not so engaged" can be read either in conjunction with "as a person or organization engaged in the business of manufacturing, distributing, selling or serving ..." or "as an owner or lessor of premises used for such purposes." Wilson seems to believe that deciding which phrase the clause modifies also decides whether the exception to the exclusion which appears at the end of (h)(2)(ii) becomes applicable. This exception reads: "[B]ut part (ii) of this exclusion [which excludes liability for serving alcoholic beverages to a minor or intoxicated person] does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above." Try as we might, we cannot discern

the connection Wilson sees between the "if not so engaged" provision and the exception to the exclusion. We do note, however, that the exclusion provision in Williams' insurance policy is a typical provision, the various clauses of which have been subjected to judicial scrutiny several times because of claims of ambiguity. *See Heritage Ins. Co. v. Cilano,* 433 So.2d 1334, 1335 (Fla.Dist.Ct.App.1983); *Morrison v. Miller,* 452 So.2d 390, 391–92 (La.Ct.App.1984); *New Hampshire Ins. Co. v. Hillwinds Inn, Inc.,* 117 N.H. 350, 373 A.2d 354, 355 (1977); *United States Fidelity & Guar. v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267, 269–70 (1985). The courts, however, seem to be in agreement that the provision as a whole is free of ambiguity.

(1) permitted USFG to deny Williams coverage in Suit I.

### III.

After independently reviewing the arguments raised by Wilson and USFG, we conclude that the exemption provision in Williams' insurance policy unambiguously denied Williams coverage in Suit I. Therefore, we conclude that the district court did not err in granting USFG summary judgment against Wilson in Suit III, where Wilson was attempting to collect under the insurance policy the judgment he was granted against Williams in Suit I. The judgment of the district court, therefore, is AFFIRMED.