**HUFFCO PETROLEUM CORPORATION, Plaintiff–Appellant,**

v.

**David H. MASSEY, Defendant–Appellee.**

**No. 87–4162.**

United States Court of Appeals,
Fifth Circuit.

Dec. 31, 1987.

**11.** *Busse,* 542 F.2d at 423.

**12.** 532 F.2d 1344, 209 Ct.Cl. 413 (1976).

**13.** *Interfirst Bank Dallas,* 769 F.2d at 303.

**14.** *Phillips,* 346 F.2d at 1000.

David W. Dogan, III, W. Sanders Carter, Jr., Heidelberg, Woodliff & Franks, Jackson, Miss., for plaintiff-appellant.

Glenn Gates Taylor, Copeland, Cook, Taylor & Bush, Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge, GEE and RUBIN, Circuit Judges.

CLARK, Chief Judge:

Huffco Petroleum Corporation appeals from the district court's summary judgment ruling that David Massey is not obligated to pay well drilling costs, 660 F.Supp. 71. Huffco asserts that genuine issues of material fact exist both as to whether an enforceable agreement existed between Huffco and Massey, and whether Massey was estopped from denying the existence of the contract. We affirm.

## I.

In September, 1984, Huffco petitioned the Mississippi Oil and Gas Board for a permit to drill a well and to "force integrate" the interests of several owners, including David Massey, in the tract assigned to the drilling unit. Massey ultimately owned a 12.5% interest in the unit. After receiving the permit, Huffco prepared a proposed joint operating agreement and sent a copy to Massey. Massey made several substantive changes in the document's provisions, executed it on October 4th, and returned it to Huffco. Huffco, however, did not agree to the changes and never executed the document Massey returned.

Huffco began drilling in late December, 1984 or January, 1985. On January 21, 1985, Huffco sent Massey a "cash call" letter requesting payment for Massey's pro rata share of $600,000 attributable to the well's drilling costs. Massey returned the letter with the following handwritten notation:

Gentlemen:

Please send me the following:
1. Invoices to substantiate $600,000.
2. Assignment of my interest in well.

Payment will be forthcoming.

Thanks,

David H. Massey

Huffco asserts that the statement "payment will be forthcoming" evidences Massey's promise to pay his pro rata share of the drilling expenses. Massey contends the statement refers only to his payment for an overdue assignment of acreage that would increase his total interest in the well tract from 5% to 12.5%.

On February 1, 1985 without any payment or further clarification from Massey, Huffco sent Massey a new proposed joint operating agreement. Three weeks later Huffco forwarded to Massey revised pages for the new agreement. The new agreement, as revised, did not include the changes Massey had proposed. Massey never agreed to or signed this new proposed operating agreement.

During the actual drilling process, Huffco provided Massey with copies of daily drilling reports. Huffco provided Massey open access to the well site. Massey also offered Huffco advice concerning the drilling and completion of the well. The well was not commercially productive. When Massey refused to pay any part of the drilling expense, Huffco brought suit against Massey to recover Massey's alleged pro rata share of the costs. Huffco alleged that Massey was obligated to pay a pro rata share of the expenses. Huffco also contended that Massey was estopped from denying that he was obligated to share the well's expenses because Huffco relied to its detriment on representations from Massey that he was "participating" in

the drilling. The district court granted Massey's motion for summary judgment.

## II.

On appeal, Huffco asserts that genuine issues of material fact exist both as to the question of whether an agreement existed between Massey and Huffco which obligated Massey to share in the well's expenses and whether Huffco detrimentally relied on representations by Massey that he was a participant in the project's expenses. This court does not agree.

## III.

■ The district court correctly held that no genuine issue of material fact exists as to whether Massey entered into an enforceable agreement with Huffco. Under Mississippi law, a mineral owner whose interest is force integrated is not liable for a pro rata share of drilling expenses in an unproductive well, absent an agreement to share expenses. Miss. Code Ann. 53–3–7(a)(1972). In *Sonat Exploration Company v. Mann,* 785 F.2d 1232, 1234 (5th Cir. 1986), this court held that a commonly used form designated Authorization for Expenditure does not, absent a valid operating agreement, constitute a contractual undertaking which obligates a person to pay drilling costs. In the case at bar, the uncontradicted proof shows that Massey and Huffco negotiated for, but never agreed to, a mutually acceptable joint operating agreement. Although they exchanged drafts of proposed operating agreements, the parties never reached an express agreement that Massey would pay any part of the well expenses.

Huffco argues that even though the parties did not sign a written joint operating agreement, Massey nonetheless was obligated to pay. Huffco asserts that Massey's "actions and inactions" during the drilling of the well were customary for a person who had agreed to share the well's expenses. Huffco contends that Massey, by acting in accordance with industry custom, could become obligated to share in the expenses.

Assuming that Massey and Huffco proceeded in a manner that was customary in the oil industry, such behavior, absent a joint operating agreement or other equivalent contractual undertaking to pay expenses does not create an enforceable contract. Custom in an industry cannot, under Mississippi law, create a contract. *Sonat Exploration Company, supra; Fireman's Fund Ins. Co. v. Williams,* 170 Miss. 199, 154 So. 545 (1934). In addition, the handwritten message by Massey on the cash call letter cannot be construed to constitute an agreement to pay a pro rata share of drilling expenses. Given the status of the interest and payment negotiations between Huffco and Massey, the meaning of the statement "payment will be forthcoming" is too ambiguous to constitute an enforceable written agreement by which Massey obligated himself to pay 12.5% of the well's expenses. Moreover, following the cash call letter and Massey's response, Huffco sent Massey a new proposed joint operating agreement. This action by Huffco is inconsistent with any determination by it that Massey was committed to share in the well's expenses by his cash call response.

Huffco's summary proof consisted of affidavits. Neither of them contends that Massey agreed to share in the well's expenses. David Harvey, a vice-president of Huffco, averred that Massey "made no statement to me and took no action that I was aware of that would have caused me to believe that he did not intend to pay his proportionate share of drilling and completion costs." David Trice merely swore that Huffco "had no agreement to carry David H. Massey's interest ... and would not have done so without adequate consideration."

■ The district court also properly held that Huffco could not invoke equitable estoppel. The proof fails to raise a genuine issue of material fact as to Huffco's purported detrimental reliance on Massey's alleged representations that he would participate in the well. Mississippi law requires that a party asserting equitable estoppel must show that he suffered detriment as a result of his reliance on another's represen-

tations or conduct. *PMZ Oil Co. v. Lucroy,* 449 So.2d 201, 206 (Miss.1984).

Assuming that Massey represented himself as a participant in the well's expenses, Huffco has failed to show it relied to its detriment on Massey's representations. Huffco did not show that Massey's conduct caused Huffco to do anything it would not otherwise have done. Despite its initial submission of a draft agreement to Massey, Huffco began drilling the well without reaching an agreement with Massey to participate in the costs. Huffco also continued drilling to completion even though Massey never indicated he was willing to execute a joint operating agreement in a form acceptable to Huffco and never paid any part of the share of well costs attributable to him.

Without offering any evidentiary material to support its contention, Huffco asserts that it never would have carried Massey's 12.5% interest in the well, thereby implying that the financial exposure was so large that no reasonable operator would have proceeded as they did without Massey's misleading inaction. If no reasonable operator would have done so, it was up to Huffco to provide an affidavit or some other evidentiary material to support that contention. Judges have no intuitive way to divine what reasonable mineral operators do under various circumstances. Moreover, whatever force this argument may have as an invocation of equitable estoppel evaporates in the face of the fact that Huffco is liable only for 10% of Massey's alleged 12.5% of the costs. The conclusion that so small an additional exposure would have caused Huffco to refrain from drilling is so implausible that, if accepted ipso facto by a trier of fact, we would reject it for lack of substantial support. In short, the proof raises no genuine issue of fact indicating that any action by Huffco depended on Massey's conduct.

The judgment of the district court is AFFIRMED.